UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

QUANISHA COLES,

                          Plaintiff,
        v.                                **DECISION AND ORDER**
                                                        10-CV-484S

LIEBERMAN, MICHAELS & KELLY, LLC,

                          Defendant.

## I.  INTRODUCTION

On June 11, 2010, Plaintiff Quanisha Coles filed a complaint alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Defendant failed to appear and defend this action, which resulted in the Clerk of the Court entering default on November 10, 2010. Presently before this Court is Plaintiff's Motion for Default Judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion is granted.

## II.  BACKGROUND

Plaintiff is a wife and mother and at the time in question was working as a nurse's aide at Chautauqua Nursing Home (Affidavit, Docket No. 16-1, ¶ 1). A representative of Defendant Liberman, Michaels & Kelly, LLC (LMK) contacted her five times between May and June 2010 about a debt she allegedly owed. (Id. at ¶ 2). LMK led Plaintiff to believe that she had committed a crime, and that LMK was "conducting an investigation" regarding a "very serious matter" and that her driver's license may be suspended. (Complaint, Docket No. 1, ¶ 10). Further, LMK told Plaintiff that 30% of her wages would be garnished if she refused to pay the debt voluntarily. (Id.) Defendant, while purportedly calling from the "legal

1

department," told Plaintiff that she committed "check fraud" and that it was going to file charges against her for grand larceny, because the debt exceeded $150.00. LMK also warned Plaintiff that it could triple the amount of the debt by taking her to court. (Id.)

Throughout the course of the telephone conversations, LMK threatened to send the issue to Chautaqua County Court if Plaintiff failed to pay. Plaintiff alleges that she became extremely afraid and worried as a result of these telephone calls. (Complaint, ¶13). LMK proposed a schedule for payments; the first was due May 28, 2010. Before this deadline, Plaintiff informed LMK that she could not make the payment. LMK then attempted to solicit payments from her and threatened to go to court. From June 1, 2010, LMK called Plaintiff three additional times; again threatening to bring her case to court.

### III. DISCUSSION

#### A.    Default Judgment Standard

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. See FED. R. CIV. P. 55(a). Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

In considering whether to enter default judgment, the court must determine whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. See FED. R. CIV. P. 55(b)(2). Damages must be established by proof,

unless the damages are liquidated or "susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence presented are drawn in the moving party's favor. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### B. Liability

#### 1. Statutory Damages

Section 1692d of Title 15 prohibits debt collectors from engaging in harassing or abusive conduct. The statute provides as follows

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
>
> * * *
>
> (6) Except as provided in section 1692(b) of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Section 1692e prohibits debt collectors from using false, deceptive, or misleading representations to collect a debt. The statute provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

3

* * *

(2) The false representation of - (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

* * *

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

* * *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Plaintiff alleges that LMK violated 1692d by proclaiming that it was investigating a "very serious matter" that would likely result in suspension of Plaintiff's driver's license if left unresolved. Additionally, LMK accused Plaintiff of committing check fraud, threatened to increase the amount she owed, and threatened to pursue litigation. Plaintiff alleges that these calls were made with the intention of annoying, abusing, and harassing her. Finally, Plaintiff alleges that LMK violated 1692(d)(6) by making more than one telephone call to her telephone without meaningfully disclosing its identity. (Complaint, Docket No. 1, ¶ 27). Based

on the undisputed facts taken as true, this Court finds that LMK violated these sections as alleged.

Plaintiff also alleges that LMK violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(7), 1692e(10), by "using a plethora of false, deceptive and/or misleading representations/means in an attempt to collect the subject debt." (Id. at ¶ 28). Based on the undisputed facts taken as true, this Court finds that LMK violated these sections as alleged.

Section 1692k(a)(2)(A) authorizes up to $1,000 in statutory damages per plaintiff for any violation of the FDCPA. The specific amount of statutory damages, not to exceed $1,000, falls within the court's discretion. See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998). Factors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, the debt collector's resources, the number of individuals adversely affected, and the extent to which the debt collector's non-compliance was intentional. See 15 U.S.C. § 1692k (b)(1).

Here, LMK is deemed to have admitted calling Plaintiff five times in May and June 2010. These calls, however, are not so persistent or egregious as to warrant the statutory maximum penalty. Under these circumstances, Plaintiff will be awarded $250 in statutory damages pursuant to 15 U.S.C. § 1692k (a)(2)(A). See Estay v. Moren and Woods LLC, No. 09-CV-620A, 2009 WL 5171881, at *2 (W.D.N.Y. Dec. 22, 2009) (awarding plaintiff $250 in statutory damages where defendant made more than one harassing call and made empty threats of litigation).

### 2. Actual Damages

Section 1692k(a)(1) authorizes an award of "any actual damage sustained by [any]

5

person as a result of [a defendant's violation of the FDCPA]." Actual damages are intended to compensate a plaintiff for "out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from a defendant's failure to comply with the FDCPA." See Mostiller, 2010 WL 335023, at *3 (quoting Milton v. Rosicki, Rosicki & Assocs., P.C., No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007).

Plaintiff requests $15,000 in actual damages. Plaintiff's son and husband submitted letters describing the effects of LMK's telephone calls on them and on Plaintiff, and Plaintiff filed her own affidavit. In her affidavit, Plaintiff describes her experience in this manner:

> I cried myself to sleep many times because I was always so upset and afraid. . . . I also felt like a burden to my husband . . . . Because of [LMK]'s threats, I lost sleep, lost my appetite, was constantly afraid of being arrested or charged with felonies. I was stressed much of the time and anxious because I didn't know what they were capable of. . . . [T]hreats also made me worried that I would lose my career or be unable to go back to school to further my education. . . . I also suffered regularly from headaches and found it very difficult to care for my newborn baby because I was so stressed.

(Affidavit, Docket No. 16-1, 2, ¶¶ 5-9).

Feelings of stress and anxiety are to be expected as a result of LMK's conduct. But the degree of stress and anxiety described in Plaintiff's affidavit appears overstated, as it is not a reasonable response to receiving five telephone calls. An award of $15,000 would therefore be grossly excessive on these facts. In this Court's view, actual damages of $500 for Plaintiff is fair and appropriate compensation in light of the few calls over a relatively short period of time.

### 3. Attorney's Fees and Costs

The FDCPA provides for the recovery of reasonable attorney's fees and costs by successful litigants. See 15 U.S.C. § 1692k (a)(3) (permitting recovery of, "in the case of

6

any successful motion to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court").

In <u>Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany</u>,[1] the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts. <u>Simmons v. N.Y. City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009). In particular, the court sought to reconcile the "lodestar" method of determining fees (the product of the attorney's usual hourly rate and the number of hours billed, subject to adjustment based on case-specific considerations to arrive at a "reasonable fee"), with the method developed in <u>Johnson v. Georgia Highway Express, Inc.</u>[2] (which considered twelve specific factors to arrive at the "reasonable fee"). <u>Arbor Hill</u>, 493 F.3d at 114. "Relying on the substance of both approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'" <u>Simmons</u>, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee." <u>Arbor Hill</u>, 493 F.3d at 117.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." <u>Barfield v. N.Y. City Health & Hosps. Corp.</u>, 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotations omitted). After <u>Arbor Hill</u>, the presumptively reasonable fee is

---

[1] 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by*, 522 F.3d 182 (2d Cir. 2008).

[2] 488 F.2d 714 (5th Cir. 1974).

7

"what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively." 493 F.3d at 112, 118.

To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

Finally, a district court must consider that a client may be able to negotiate with his or her attorneys, based on their desire for the reputational benefits that could accrue from association with the case. Arbor Hill, 493 F.3d 119.

Plaintiff's attorney, Frank J. Borgese, practices law in this district and has spent his career working in consumer rights and in FDCPA matters. Given his experience, the Court finds his request for compensation of $180 per hour to be reasonable. See Proctor v. PMR Law Group, No. 09-CV-1028S, 2010 WL 4174723, at *5 (W.D.N.Y. Oct 24, 2010) (compensating attorney at $175 per hour). But the 29.1 hours of attorney-time billed for this case is unreasonable. See id. (compensating attorneys and paralegal for 9.3 and 7.7 hours of work, respectively); Copper v. Global Check & Credit Servs., LLC, No. 10-CV-145S, at *7 (W.D.N.Y. Dec. 21, 2010) (compensating attorneys and paralegal for 9.8 and 1.7 hours of work, respectively). Given Borgese's experience and the fact that Defendant did not

8

appear, there is no reason that the attorney time in this case should exceed 15 hours. Borgese is well versed in the law in this area and the papers filed were the standard submissions for a case of this nature. Accordingly, this Court will award 15 hours of attorney time at $180 per hour, for $2,700 in attorney's fees. This Court will also award $78 in paralegal fees, $350 for the filing fee, and $65 for service of process.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is granted. Plaintiff Quanisha Coles is awarded $250 in statutory damages, $500 in actual damages, and $3,193 for attorney's fees and costs, for a total award of $3,943.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Default Judgment (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to enter judgment in favor of Plaintiff Quanisha Coles against Defendant LMK, in the amount of $3,943.

FURTHER, that the Clerk of Court shall close this case upon entry of judgment.

SO ORDERED.

Dated: July 27, 2011
Buffalo, New York

    /s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court